UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | CIVIL ACTION |
|---|---|
| VERSUS | NO. 09-03044 |
| AQ BOAT, L.L.C., ET AL. | SECTION "C" (3) |

# OPINION[1]

This trial before the Court without a jury was submitted on the briefs and evidence on July 16, 2010. Having considered the record, the evidence and the memoranda of counsel, the Court finds in favor of the plaintiff, United States of America ("United States") and against defendant Ambassadors International, Inc. ("Ambassadors") for the following reasons.

## I. Background

Nearly all of the fact has been stipulated to in this case. To finance the construction of the luxury riverboat AMERICAN QUEEN in 1995, Great AQ Steamboat, LLC ("Original Shipowner") pursuant to 46 U.S.C. §§ 53701, *et seq.* issued United States Government Guaranteed Ship Financing Bonds. These bonds were issued under a Trust Indenture dated August 24, 1995 between the Original Shipowner and the Bank of New York as Indenture Trustee, in the principal amount of $60,589,000. Rec. Doc. 43 at 1. In order to secure the bond, the United States acting through the Maritime Administration of the Department of Transportation ("MARAD") placed a First Preferred Ship Mortgage on the vessel.

On October 22, 2001 the ship was sold to American Queen Steamboat, LLC ("AQ"), which expressly assumed the financial obligations concerning the vessel in the Assumption Agreement and the 2006 Supplement to Trustee Indenture. Rec. Doc. 43 at 2-3. Also as part of

---
[1] Ellen Cornutt, J.D. Candidate at The University of Virginia School of Law assisted in preparing this Opinion.

the 2006 sale and assumption of obligations, AQ's parent company Ambassadors executed and delivered to MARAD a Limited Guaranty, in which Ambassadors guaranteed the payment of $7,257,095 of the amounts owed by AQ.[2] The guaranty was reduced by each payment on the debt secured by the mortgage. For two years following the purchase of the vessel, AQ and/or Ambassadors made payments on the debt secured by the mortgage and the Limited Guaranty.

In 2008, AQ notified MARAD that it would not make its February 24, 2009 payment due to financial difficulties. On November 15, 2008, the AMERICAN QUEEN was surrendered to MARAD, which declared a default under the mortgage and demand payment under the United States' guarantee. On December 30, 2008, MARAD sent a letter notifying Ambassadors that AQ had failed to pay its obligations and demanded immediate payment of the balance of the Limited Guaranty. No payment was received from AQ and as of February 17, 2009, AQ owed MARAD $30,086,555.36 as principal and interest on the mortgage debt. Rec. Doc. 43 at 6. In May 2009, the AMERICAN QUEEN was sold at a U.S. Marshal's foreclosure auction to MARAD, which credit bid $18,000,000 of the mortgage debt as the purchase price.[3] After administrative expenses were deducted, the net value of the AMERICAN QUEEN after the judicial sale was $17,577,538.54 and that amount was credited against the debt secured by the mortgage, specifically the Secretary's Note and the 2006 Additional Note Endorsement. Rec. Doc. 43 at 7.

On March 11, 2009 MARAD filed this action in the Eastern District of Louisiana against defendant AQ seeking the collection of the deficiency judgment obtained the Eastern District of Texas action and against Ambassadors to recover $1,197,095, allegedly remaining owed under

---

[2] *See* Rec. Doc. 1, Exh. K
[3] *See United States v. AMERICAN QUEEN*, No. 09-00198 (E.D. Tex. 2009).

the Limited Guaranty. AQ failed to answer the plaintiff's complaint and on December 30, 2009, this Court ordered a default judgment in favor of the plaintiff in the amount of $12,980,496.22 pursuant to Federal Rule of Civil Procedure 54(b). Rec. Doc. 26. AQ is not expected to pay the default judgment due to its financial difficulties. The remaining issue in this case as stipulated by the parties is whether or not the defendant has further obligations under the Limited Guaranty. Rec. Doc. 43 at 8.

**II. Law and Analysis**

*Stipulation to the Applicable Law*

Pursuant to this Court's Order on June 29, 2010, the parties have stipulated to the foregoing applicable rules of law to be used in this trial to interpret the relevant contractual provisions. Rec. Doc. 51 at 2-6. The Limited Guaranty provides in part that, "[t]his Guaranty Agreement shall be governed by the federal law of the United States of American or in the absence of applicable federal law by the laws of the State of New York." Exh. K. Thus, in light of this agreement the parties have stipulated that federal law, including general maritime law applies in this case and in the absence of applicable general maritime or other federal law, New York law shall apply.

"[T]he general maritime law is not a complete or all-inclusive system"; therefore, "[w]hen new situations arise that are not directly governed by legislation or admiralty precedent, federal courts may fashion a rule for decision by a variety of methods." *Giorgio v. Alliance Operating Corp.*, 921 So. 2d 58, 67 (La. 2006) (citing Schoenbaum, Admiralty & Maritime Law at § 401, pp. 158-59 (4th ed. 2004)). For instances, admiralty courts will borrow principles from other areas governed by federal law as a rule for decision. *See Norfolk Southern Railway Co. v.*

3

*Kirby*, 543 U.S.14, 27 (2004); *Lakes of Gum Cove Hunting & Fishing*, L.L.C. *v. Weeks Marine, Inc.*, 182 F. Supp. 2d 537, 545 (W.D.La 2001).

*Interpretation of the Limited Guaranty*

As a result of the default judgment in favor of the plaintiff and against defendant AQ, the only issue remaining in this case is the interpretation of the Limited Guaranty and the decision of whether or not defendant Ambassadors has any remaining obligations to the plaintiff. A guaranty such as the Limited Guaranty is a type of contract. *Valley Nat'l Bank v. Greenwich Ins. Co.*, 254 F. Supp. 2d 448, 453 (S.D.N.Y. 2003). Interpretation of the terms of a contract is a matter of law, reviewable *de novo* on appeal. *Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955-56 (5th Cir. 1984). Whether under maritime law or New York Law, in order to prevail in action for breach of contract, the plaintiff bears the burden of proving that the defendant breached the contract. *See Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005) (maritime law); Maguire *Co. v. Herbert Constr. Co.*, 945 F. Supp. 72, 75 (S.D.N.Y. 1996) (New York law). The plaintiff has the burden of proving the terms of the contract, as well as damages. 411 F.3d at 1249; 945 F. Supp. at 75.

Specifically, the plaintiff argues that the Court should reject defendant Ambassadors' argument that the surrender of the AMERICAN QUEEN was a "payment-in-kind," reducing the amount of Ambassador's obligations. Rec. Doc. 52 at 2-3. Ambassadors claims that the proceeds from the judicial sale of the AMERICAN QUEEN credited against the guaranteed amount and once the amount was credited the Limited Guaranty was extinguished. Rec. Doc. 46 at 7. However, the United States argues that Ambassadors had no ownership interest in the vessel when it was surrendered and express language of the Limited Guaranty disallows such interpretation of the defendant's obligations. Rec. Doc. 44 at 3.

Under maritime law, "the general rules of contract construction and interpretation apply[.]" *Tranchina v. Dynamic Industries, Inc.*, 2008 WL 3364124, at *3 (E.D.La. Aug. 8, 2008) (citing *Marine Overseas Services, Inc. v. Crossocean Shipping Co. Inc.*, 791 F.2d 1227 (5th Cir. 1986); *Ogea v. Loffland Bros Co.*, 622 F.2d 186 (5th Cir. 1980)). In interpreting a contract, its express terms are given the greatest weight. Express terms are superior the parties' course of performance, course of dealing, or usage of trade. Restatement (Second) of Contracts §203 (1981). Words in a contract must be given their plain meaning unless the contract is unambiguous. *Hardy v. Gulf Oil Corp*, 949 F.2d 826, 834 (5th Cir. 1992). A more specific provision in a contract will control over a moral general conflicting provision." *Baton Rouge Oil & Chem. Workers' Union v. Exxon Mobil Corp.*, 289 F.3d 373, 377 (5th Cir. 2002). Whether a contract is ambiguous is a question of law for the Court to decide. *D.E.W., Inc. v. Local 93, Laborers' Int'l Union of North America,* 957 F2d 196, 1999 (5th Cir. 1992).

The Court finds that the language of the Limited Guaranty is not ambiguous and supports the plaintiff's interpretation of the guaranty. The express language of paragraph 2(b) of the Limited Guaranty precludes Ambassadors from being able to claim the surrender of the AMERICAN QUEEN as payment-in-kind.[4] Rec. Doc. 1-12 at 4-5. By its clear language, the

---

[4] Paragraph 2(b) of the Limited Guaranty states:
The Guarantor hereby consents and agrees that its obligations under this Guaranty Agreement *will not be discharged* by any act or omission to act any kind by the Secretary of any other person or any other circumstances whatsoever (*including, but not limited to*, any extension, rearrangement or renewal with respect to any indebtedness or other obligation of the Assuming Shipowner with or without notice to the Guarantor, any waiver of any right of the Secretary under the terms of the Secretary's Note, the Security Agreement, the Mortgage or this Guaranty Agreement, any release of security, any transfer or assignment of rights or obligations accruing to the Secretary under the Secretary's Note, the Security Agreement, the Mortgage or this Guaranty Agreement, any corporate reorganization, dissolution, merger, acquisition of or by other alternation of the corporate existence or structure of the Assuming Shipowner or the Guarantor, discharge of the Assuming Shipowner in bankruptcy, the invalidity, illegality or unenforceability of the Secretary's Note, the Security Agreement, the Mortgage or this Guaranty Agreement or the absence of any action to enforce the obligations of the Assuming Shipowner) which might constitute a legal or equitable discharge of the Guarantor; it being the intention of the Guarantor that this Guaranty Agreement be absolute, continuing and unconditional (subject to the limitations set forth herein) and the guarantee hereunder *shall only be discharged by* the payment in full of all sums so guaranteed hereunder. \
Exh. K. (emphasis added).

Limited Guaranty requires that nothing short of monetary payments of principal totaling $7,257,095 will satisfy Ambassadors' obligation under the guaranty. Rec. Doc. 44 at 4. Although payment-in-kind is not specifically listed in the Limited Guaranty's paragraph 2(b)'s parenthetical list of actions that would not satisfy the obligation of Ambassadors, the list is prefaced by the phrase "*including, but not limited to.*" Rec. Doc. 1-12 at 4 (emphasis added).

"Being a contract, a guaranty agreement is to be construed like other contracts so as to give effect to the parties' intentions. In particular, the obligations of guarantor must be strictly construed according the terms of agreement and cannot be altered, extended or enlarged by the creditor or debtor without the guarantor's consent, since he cannot be held responsible to guarantee a performance different from that which he intended or specified in the guaranty." *Fehr Bros.*, *Inc. v. Scheinman*, 509 N.Y.S. 2d 304-305-06 (N.Y. App. Div. 1986).

It is well established under both federal and New York law that a guaranty is "a collateral agreement for primary or principal obligation that binds guarantor to performance in evident of nonperformance by the principal obligor….Consequently, the hallmarks of a guaranty are that is collateral to the first obligation and it is different from the basic contract to which it is collateral." *See Jones Motor Co. v. Teledyne, Inc.*, 690 F. Supp. 310, 313 (D. Del. 1988) (federal law); *Fehr Bros., Inc.*, 509 N.Y.S.2d at 305-06 (New York law). The Limited Guaranty between Ambassadors and the United States is collateral to AQ's undertaking and binds Ambassadors to its performance in the event of nonperformance by AQ. It is separate and distinct from AQ's obligation to pay the First Preferred Ship Mortgage. *See Jones Motor Co.*, 690 F.Supp. at 313; *General Overseas Films, Ltd. v. Robin Int'l, Inc.*, 542 F. Supp. 684 (S.D.N.Y. 1982), *aff'd*, 718 F.2d 1085 (2d Cir. 1983).

Viewing the agreement from the intent of the parties, the purpose of the Limited Guaranty clearly seems to have been to increase the security above that provided to MARAD by the First Preferred Ship Mortgage. The defendants claim that the purpose of the Limited Guaranty is not to ignore certain acts in satisfaction of the underlying obligations but rather to allow MARAD and AQ to amend the terms and conditions of the underlying obligations without affecting the validity of the Limited Guaranty. Rec. Doc. 46 at 7-8. Ambassadors argues that if the parties had intended that the surrender or foreclosure on the collateral, AMERICAN QUEEN, would not reduce Ambassadors' obligations under the guaranty, they could have included such a provision in the contract. *Id.* However, the defendant's argument is called into question by the January 12, 2009 letter sent to the Secretary of the Maritime Administration, in which Ambassadors sought to correct the amount allegedly owed under the Limited Guaranty to $958,142. In this letter it appears that Ambassadors understood that it would be bound by the Limited Guaranty even two months after the surrender of the vessel. Exh. U.

Following Ambassadors' interpretation of the provision would provide MARAD with no additional consideration for the Limited Guaranty beyond that provided by AW for the mortgage, which already entitled MARAD to repossess the vessel. Thus, giving credence to Ambassadors' interpretation would render the Limited Guaranty superfluous. Ambassadors cites precedents under which an obligor made payments-in-kind, but in those cases the obligor had proper title to the property given as the payment-in-kind. Rec. Doc. 46 at 5-6. Ambassadors never owned the AMERICAN QUEEN and thus no payment-in-kind was made when the vessel was surrendered to MARAD. Although Ambassadors is the parent corporation of AQ, the corporate veil which shields Ambassadors from AQ's debt deprives Ambassadors of any financial benefit from AQ's actions.

In light of the express language of the Limited Guaranty and the purpose of the parties in committing themselves to the agreement, the Court concludes that Ambassador's obligation in the Limited Guaranty to pay a portion of the debt owed by AQ to MARAD was not and could not be satisfied by the surrender of the AMERICAN QUEEN.

Accordingly,

IT IS ORDERED that judgment shall be entered against defendant Ambassadors for $958,142, the remainder of the amount guaranteed[5], plus prejudgment interest to run from the date of judicial demand.

New Orleans, Louisiana, this 3rd day August, 2010.

Helen G. Berrigan
United States District Judge

---

[5] The parties have stipulated that the principal payments made by AQ and/or Ambassadors total $6,298,952.66 (five principal payments of $1,212,000 on the Secretary's Note and one payment of $238,952.66 on the 2006 Additional Note Endorsement), leaving a balance of $958,142. Rec. Doc. 43 at 5.